# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODERICK BELSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-7333** |
| **DEPARTMENT OF INTERIOR ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss or Alternatively for Summary Judgment (Doc. 36). For the following reasons, the Motion is **GRANTED IN PART**.

## BACKGROUND

Plaintiff Roderick Belson was a Senior Incident Investigation Coodinator with the Office of Incident and Investigation ("OII") at the Bureau of Safety & Environmental Enforcement ("BSEE"), an agency of the Department of Interior. In his Complaint, he brought a number of claims against his employer for harassment, intentional discrimination, and retaliatory treatment resulting in the denial of pay increases and promotional opportunities. Since discovery, Plaintiff has limited his case to just two claims and consents to the

1

dismissal of all other claims. Plaintiff now alleges that (1) he was retaliated against for prior protected activity, and (2) he was subjected to a hostile work environment.

In December 2015, Plaintiff, an African American, made an EEO complaint that he was receiving less compensation than his white colleagues for comparable work and that he was subjected to disparate treatment based on his race and disability. Thereafter, Plaintiff alleges that another employee, Charles Arnold, was selected to serve as the Acting/Permanent Chief of the OII. He further alleges that Arnold was put in the position as his superior in order to harass him in response to his EEO Complaint.

Defendant filed a Motion to Dismiss or Alternatively for Summary Judgment on Plaintiff's claims. Plaintiff has consented to some of the relief requested therein. Specifically, Plaintiff consents to the dismissal of the Department of Interior and BSEE as Defendants; and the dismissal of his disparate treatment claim concerning the reclassification of his job series; his claim based on delayed reclassification; his race discrimination claim; his disability discrimination claim; and all state law claims. Plaintiff opposes dismissal of his retaliation and hostile work environment claims.

Although Defendant's Motion was styled as a Motion to Dismiss or Alternatively for Summary Judgment, the Motion is converted to a motion for summary judgment because Defendant has attached matters outside the pleadings, which the Court chooses not to exclude.[1] The Court further finds

---

[1] *See* FED.R.CIV.P. 12(d).

that both parties have received adequate notice that this Motion might be converted because both parties have attached matters outside the pleadings.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

The Court will consider Defendant's arguments for dismissal of Plaintiff's retaliation and hostile work environment claims in turn.

### A. Retaliation

"Title VII's antiretaliation provision forbids employer actions that discriminate against an employee (or job applicant) because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing."[10] "A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action."[11] An adverse employment action must be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of

---

[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006).
[11] Brazoria Cnty., Tex. v. E.E.O.C., 391 F.3d 685, 692 (5th Cir. 2004).

discrimination."[12] "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason."[13]

Plaintiff easily satisfies the first prong of his prima facie case. It is undisputed that, in December 2015, he complained to his supervisors and filed an EEO complaint alleging racial discrimination in pay and disparate treatment based on race and disability. Shortly thereafter, in January 2016, Charles Arnold was appointed to serve as acting, and later permanent, Chief of the OII. Plaintiff alleges that Arnold was appointed to be his supervisor in order to harass him in retaliation for his EEO complaint.[14] Specifically, he alleges Arnold treated him differently than the other employees in the OII, was confrontational toward him, closely monitored his whereabouts, interrogated and unduly questioned him, and denied his requests for leave to attend doctor's appointments. Plaintiff points to the temporal proximity of his EEO Complaint and Arnold's appointment as proof of a causal connection. However, even assuming that Plaintiff has established a prima facie case, the Court finds that Plaintiff cannot show any discriminatory animus in Arnold's hiring.

---

[12] Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).
[13] Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008).
[14] The Court notes that the briefing evinces some confusion about the nature of Plaintiff's retaliation claim. Specifically, Plaintiff seems to argue that he was retaliated against by the selection of Arnold as his supervisor, while Defendant characterizes the retaliation as the non-selection of Plaintiff for the Chief of OII position. Assuming Plaintiff intended to bring the latter claim as Defendant suggests, he has not sufficiently shown that he was better qualified for the position.

Defendant argues that Arnold was selected by a three-person panel for the position because he was the most qualified of the applicants. It points out that, although Arnold had a background in law enforcement, he had worked as a Special Investigator for BSEE for three years prior to his selection. He had also served as a panel chair, which was a qualification specifically identified in the vacancy announcement.

Plaintiff argues that this legitimate, non-discriminatory reason for Arnold's selection is not to be believed. He argues that Arnold was not qualified for the position because he had no experience working in the oil industry. Rather, all of his prior experience was in law enforcement. Arnold had never worked in the OII, and Plaintiff argues that he did not have the experience necessary to supervise the petroleum engineers and incident investigators in that office. Plaintiff also points out that the criteria for the OII Chief position had to be changed from GS14 to GS13/14 for Arnold to qualify for the job.[15] Plaintiff alleges that Arnold was appointed as his supervisor to harass him and use the interrogation tactics he learned as a law enforcement officer on Plaintiff on a daily basis.

Plaintiff does not, however, provide any evidence of discriminatory animus in Arnold's hiring. The Fifth Circuit has stated that courts "must remain cognizant that the ultimate issue is whether the employer's selection of a particular applicant . . . was motivated by discrimination."[16]

---

[15] "[A]n employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual.'" Churchill v. Texas Dep't of Crim. Just., 539 F. App'x 315, 320 (5th Cir. 2013) (quoting EEOC v. Tex. Instruments Inc., 100 F.3d 1173, 1182 (5th Cir. 1996)).

[16] *Id.*

"[D]iscrimination suits still require evidence of discrimination."[17] Although Plaintiff calls into question Defendant's legitimate, non-discriminatory reason, he does not offer any evidence that the real reason for Arnold's hiring was discriminatory. Plaintiff has failed to "meet his burden of producing any evidence of discrimination sufficient to survive summary judgment, and his evidence to rebut the non-discriminatory reasons offered by [Defendant] is not so persuasive so as to support an inference that the real reason was discrimination."[18] Accordingly, his retaliation claim is dismissed.

**B. Hostile Work Environment**

Next, Plaintiff argues that he was subjected to a hostile work environment at the hands of Arnold. At different points in his briefing, Plaintiff suggests that he was subjected to this harassment because of his race or in retaliation for his EEO claim. This Court will consider each claim separately.

*a. Hostile Work Environment Based on Race*[19]

To establish a hostile work environment claim under Title VII, a plaintiff must show all of the following: (1) that he belongs to a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on the protected class; (4) that the harassment was sufficiently severe or

---

[17] Rubinstein v. Administrators of Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir. 2000).

[18] *Id.*

[19] Defendant's briefing mainly addresses Plaintiff's claim for retaliatory hostile work environment in light of its belief that Plaintiff agreed to the dismissal of all claims based on race. The Court, however, reads Plaintiff's briefing as only consenting to the dismissal of his racial discrimination claim. *See* Doc. 47 at 1, n.1.

pervasive; and (5) the employer knew of the harassment and failed to take prompt remedial action.[20]

To create a hostile work environment, harassment must be "severe and pervasive," involving "patterns or allegations of extensive, longlasting, unredressed, and uninhibited . . . threats or conduct that permeate[] the plaintiffs' work environment."[21] "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[22] "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[23]

Defendant argues that Plaintiff cannot show that the harassment of which he complains was severe and pervasive. Plaintiff presents evidence that Arnold treated him differently than his other subordinates at the OII. Specifically, he argues that Arnold would:

> '[B]ow up' to or physically challenge Mr. Belson for no reason; Monitor Mr. Belson's whereabouts on a daily basis; Invade Mr. Belson's personal space and threaten Mr. Belson with physical violence; Give Mr. Belson ridiculous, untenable work deadlines to meet; Interrogate Mr. Belson to the point that Mr. Belson's colleagues believed that Mr. Belson suffered from Parkinson's

---

[20] Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298 (5th Cir. 2001).
[21] Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999).
[22] Shepherd v. Comptroller of Pub. Accounts of State of Texas, 168 F.3d 871, 874 (5th Cir. 1999).
[23] Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quoting Walter v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000)).

disease because he shook noticeably; Unduly question Mr. Belson about his medical appointments; Den[y] Mr. Belson leave to attend a doctor's appointment at the VA, which exacerbated Mr. Belson's knee problem and resulted in Mr. Belson needing knee surgery[.]

In support of his claims, Plaintiff relies in large part on the testimony of his co-worker, Cemal Ozoral. Ozoral testified that Plaintiff was treated differently by Arnold than other employees at the OII. He confirmed that Arnold was "constantly" checking on Plaintiff's whereabouts, that he was "extremely confrontational" with Plaintiff, that he raised his voice at Plaintiff, that he made physically threatening gestures and body language toward Plaintiff, that he gave Plaintiff unrealistic deadlines for the completion of work, and that Plaintiff left Arnold's office on multiple occasions "shaking." He testified that these interactions occurred daily or every few days. Ozoral further testified that he found it significant that Plaintiff was the only African American at the OII and the only one that was treated differently, suggesting that the harassment was a result of Plaintiff's race. Accordingly, Plaintiff has presented evidence of persistent harassment and threats of physical violence because of his race.

Defendant also argues that Plaintiff's claim must fail because it took prompt remedial action to address the alleged harassment. "Prompt remedial action must be reasonably calculated to end the harassment."[24] Further, "[w]hat constitutes prompt remedial action depends on the facts of the case; not every response by an employer will be sufficient to discharge its legal duty."[25] The record shows that Plaintiff reported his problems with Arnold as

---

[24] Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 329 (5th Cir. 2004).
[25] *Id.*

early as February 2016 and that Arnold was counseled on the issue. Plaintiff complained again in September 2016, and Arnold was again counseled. Plaintiff alleges that the harassment was ongoing throughout this time period. It is undisputed that Plaintiff was not removed from Arnold's supervision until October 2017. Defendant alleges that the delay was a result of bureaucracy, a change in administrations, a vacancy in the Director position, and Plaintiff's ongoing EEO investigations. Accordingly, there is an issue of fact regarding whether Defendant took prompt remedial action in response to Plaintiff's complaints of harassment. Plaintiff has therefore presented sufficient evidence to establish a prima facie case on his claim for hostile work environment based on race. Summary judgment on this claim is inappropriate.

b. *Retaliatory Hostile Work Environment*

In a retaliatory hostile environment claim, the first and third elements of a prima facie case have a different focus. "In the retaliation context, the first element would require proof that the plaintiff had engaged in protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity."[26] Here, Plaintiff's claim fails on the third element. It is undisputed in the record that Arnold was not aware of Plaintiff's EEO Complaint until March 2016—three months after he was selected as Plaintiff's supervisor and began the alleged harassment. Accordingly, Plaintiff cannot show a causal link between the harassment and his EEO complaint. This claim is dismissed.

---

[26] Rowe v. Jewell, 88 F. Supp. 3d 647, 673 (E.D. La. 2015).

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED IN PART**. Plaintiff's claim for hostile work environment based on race against the Secretary of the Department of Interior remains pending. All other claims are **DISMISSED WITH PREJUDICE**. All claims against the Department of Interior and the Bureau of Safety and Environmental Enforcement are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 15th day of July, 2021.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**